AO 106 (Rev. 06/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED
APR 06 2018
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No.
)
Black IPhone X )
Seized from Lewis ADAM )   **18MJ1610**
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-1, which is incorporated by reference.

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B-1, which is incorporated by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

*Code Section*                          *Offense Description*
21 U.S.C. §§ 841 and 846         Distribution of federally controlled substances and conspiracy to do the same

The application is based on these facts:
See Affidavit of HSI Special Agent Anthony Lyons, which is hereby incorporated by reference and made part hereof.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Anthony Lyons, HSI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __4/6/18__

_____
*Judge's signature*

City and state: San Diego, CA                    Hon. William V. Gallo, Magistrate Judge
*Printed name and title*

# AFFIDAVIT

I, Anthony Lyons, being duly sworn, hereby state as follows:

## INTRODUCTION

1. This affidavit supports an application for a warrant to search the following electronic devices (collectively **Target Devices**):

   a. Black IPhone X[1] seized from Lewis ADAM (**Target Device 1**);

   b. Silver Samsung Galaxy DEC #: 089168896906845764 (**Target Device 2**)

as described in Attachments A-1 and A-2, and seize evidence of crimes, specifically, violations of Title 21, United States Code, Sections 841 and 846. This search supports an investigation of Lewis ADAM for the crimes mentioned above. A factual explanation supporting probable cause follows.

2. The **Target Devices** were seized on March 7, 2018 at the U.S. Border Patrol Station located at 25762 Madison Ave, Murrieta, CA, 92562 pursuant to a seizure of approximately 23.85 KG of marijuana. The **Target Devices** are presently stored at HSI Seized Property Custodian at 880 Front Street, San Diego, CA, 92101.

3. Based on the information below, there is probable cause to believe that a search of the **Target Devices** will produce evidence of the aforementioned crimes, as described in Attachments B-1 and B-2.

4. The information contained in this affidavit is based upon my experience and training, consultation with other federal, state, and local law enforcement agents. The evidence and information contained herein was developed from interviews and my review of documents and evidence related to this case. Because this affidavit is made

---

[1] No additional identifying markers on this device are known. Based upon my conversations with law enforcement personnel regarding this particular make and model device, law enforcement cannot learn additional unique identifying information without engaging in a search of the device.

1

for the limited purpose of obtaining a search warrant for the **Target Devices**, it does not contain all of the information known by me or other federal agents regarding this investigation, but only contains those facts believed to be necessary to establish probable cause.[2]

## EXPERIENCE AND TRAINING

5. I am a Special Agent for the Homeland Security Investigations (HSI) San Diego. I have been employed with the Department of Homeland Security for almost 12 years, 7 of those as a Special Agent with HSI and 4 of those as an Officer with Customs and Border Protection. I have been previously trained at the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia and have over a decade of experience related to narcotics investigations and interdiction.

6. As HSI San Diego requires all of its Special Agents to participate in narcotics investigations related to the U.S. and Mexico International Border. I have participated in dozens of narcotics investigations involving coconspirators who used cellular/mobile telephones to further their trafficking activities. I have personally reviewed forensic searches of cellular/mobile telephones stemming from those investigations, and I am familiar with the way narcotics trafficking coconspirators converse, text, or otherwise chat with one another about their trafficking activities. I am also familiar with coded conversation used by traffickers to conceal their activities from law enforcement investigation.

7. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

    a. Drug traffickers will use cellular/mobile telephones because they are mobile

---

[2] U.S. Border Patrol Agents at the checkpoint attempted a manual review of the phones at the time of arrest. However, none of the information reviewed from those searches are relied upon or provided in support of this search warrant application.

2

and they have instant access to telephone calls, text, web, and voice messages.

b. Drug traffickers will use cellular/mobile telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

c. Drug traffickers and their accomplices will use cellular/mobile telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

d. Drug traffickers will use cellular/mobile telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

e. Drug traffickers will use cellular/mobile telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings.

f. Drug traffickers and their co-conspirators often use cellular/mobile telephones to communicate with load drivers who transport their narcotics and/or drug proceeds.

g. The use of cellular telephones by conspirators or drug traffickers tends to generate evidence that is stored on the cellular telephones, including, but not limited to emails, text messages, photographs, audio files, videos, call logs, address book entries, IP addresses, social network data, and location data.

8. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular/mobile telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, I know based upon my training, education,

3

and experience investigating these conspiracies that searches of cellular/mobile telephones yields evidence:

    a. tending to indicate efforts to possess and/or transport with the intent to distribute marijuana, or some other federally controlled substances within the United States;

    b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the possession of and/or transportation with the intent to distribute marijuana, or some other federally controlled substances within the United States;

    c. tending to identify co-conspirators, criminal associates, or others involved in possession of and/or transportation with the intent to distribute marijuana, or some other federally controlled substances within the United States;

    d. tending to identify travel to or presence at locations involved in the possession of and/or transportation with the intent to distribute marijuana, or some other federally controlled substances within the United States, such as stash houses, load houses, or delivery points;

    e. tending to identify the user of, or persons with control over or access to, the **Target Devices**; and/or

    f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

9. I am currently investigating ADAM and others for the unlawful importation, exportation, transportation, and possession with intent to distribute federally controlled substances. Through my investigation, I have identified ADAM as being a member of a conspiracy responsible for the distribution of marijuana within the United States, as well as the exportation of other federally controlled substances to places outsider thereof.

10. On March 7, 2018, United States Border Patrol Agents assigned to the Murrieta Border Patrol Station were conducting targeted enforcement and anti-smuggling operations within the Murrieta Border Patrol area of responsibility. Border Patrol Agents were operating in the area using a marked U.S. Border Patrol (BP) vehicle. At approximately 12:30 p.m., agents were observing the Interstate 15 ("I-15) northbound traffic near Deer Springs Road in Escondido, California while travelling in second lane from the right. This area of the I-15 is south of the U.S. Border Patrol Checkpoint on the I-15, and this is a common route for smugglers to use to transport contraband or illegal aliens further into the United States. While conducting their roving patrol on the freeway, the agents noticed a black Toyota 4Runner ("the vehicle"), travelling in the far right lane. It approached their position, and then it maintained approximately 65 miles per hour, which was 5 miles under the speed limit for this area.

11. The agents found this odd because there were no vehicles impeding its route of travel, and there were no road conditions that appeared to limit the vehicle's ability to travel with the speed of traffic. The agents observed that vehicles travelling in the other lanes were passing around both the agents' vehicle and the suspect vehicle. The vehicle was travelling so slow that traffic stacked up behind the vehicle. The agents knew from experience and training that individuals involved in criminal activity will sometimes travel considerably slower to create distance from law enforcement. It was not until the agents reduced their speed to approximately 55 miles per hour, 15 miles under the speed limit, that the vehicle finally passed them. The agents decided to follow the vehicle longer to investigate. As the agents followed the vehicle, they continued to observe the driver. The agents observed the driver exhibiting nervous behavior, including making brief eye contact with the agents as they pulled up alongside the vehicle and then attempting to avoid any further eye contact. The driver also would change lanes when the agents attempted to travel behind the vehicle. The agents also observed erratic driving, including the vehicle swerving back and forth within lanes.

Based upon their observations and their training, this behavior appeared consistent with a driver who was preoccupied with checking his/her rearview mirrors.

12. The vehicle exited the freeway near Rainbow, California, which is south of the Border Patrol Checkpoint. The agents followed the vehicle down the exit and observed the vehicle stop at the intersection. The agents observed that the driver did not appear to know what direction he wanted to go. Based upon all of their observations, training, and experience in patrolling this portion of the I-15, the agents believed the driver was engaged in smuggling activities. The agents conducted a vehicle stop.

13. As one of the agents approached the driver's side of the vehicle, he immediately smelled the odor of marijuana coming from the vehicle. The agent observed two black trash bags sitting on the backseat of the vehicle. One of the trash bags had a hole in it and the agent could see a green leafy substance he believed to be marijuana.

14. Agents called for a canine unit to screen the vehicle. The trained Narcotics and Human detector Dog (N/HDD) conducted a canine sniff of the vehicle and alerted to the presence of narcotics within the vehicle. Pursuant to a search of the vehicle and the driver, later identified as Lewis ADAM, agents found a Black IPhone X on ADAM's person and a Silver Samsung Galaxy in the rear cargo area storage compartment on the driver's side of the vehicle next to some of the trash bags containing marijuana.

15. At approximately 12:45 p.m., agents placed ADAM under arrest for possession with intent to distribute narcotics. The agents, the driver, the vehicle, and the narcotics were subsequently transported to the Murrieta Border Patrol Station for further processing. Four trash bags were removed from the Toyota and were weighed and tested. The sample field-tested positive for marijuana. The 4 trash bags had a total combined weight of 23.85 kg.

16. Based upon my training, education, experience, and in consultation with other law enforcement, I know that recent calls made and received, telephone numbers, contact names, electronic mail (e-mail) addresses, appointment dates, text messages,

pictures and other digital information are stored in the memory of the **Target Devices** which may identify other persons involved in narcotics trafficking activities. Accordingly, based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the narcotics trafficking activities of Lewis ADAM, such as telephone numbers, made and received calls, contact names, electronic mail (e-mail) addresses, appointment dates, messages, pictures, audio files, videos and other digital information are stored in the memory of the **Target Devices**.

17. Finally, drug trafficking conspiracies require intricate planning and coordination. This often occurs days, weeks, or even months prior to the actual transportation of narcotics to its intended destination. Coconspirators communicate with one another in efforts to ensure success in getting their valuable cargo to its destination within the United States. In this case, evidence supports probable cause that Lewis ADAM began working with his drug trafficking coconspirators as early as Tuesday, June 27, 2017. This is based upon a review of Toll Records, Reports from other law enforcement agents, and other search warrants. Therefore, the date range for this search should be from June 27, 2017 up to and including March 7, 2018.

## METHODOLOGY

18. It is not possible to determine, merely by knowing the cellular/mobile telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular/mobile devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular/mobile service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that

7

reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular/mobile telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular/mobile telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

19. Following the issuance of this warrant, I will collect the subject cellular/mobile telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

20. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## CONCLUSION

21. Based on all of the facts and circumstances described above, there is probable cause to conclude that Lewis ADAM used the **Target Device(s)** to facilitate violations of Title 21, United States Code, Sections 841 and 846.

22. Because the **Target Devices** were promptly seized during the investigation of Lewis ADAM's trafficking activities and have been securely stored, there is probable

8

1 cause to believe that evidence of illegal activities committed by Lewis ADAM
2 continues to exist on the **Target Devices**. As stated above, I believe that the date range
3 for this search is from June 27, 2017 up to and including March 7, 2018.

4     23. WHEREFORE, I request that the court issue a warrant authorizing law
5 enforcement agents and/or other federal and state law enforcement officers to search
6 the items described in Attachments A-1 and A-2, and the seizure of items listed in
7 Attachment B-1 and B-2, using the methodology described above.

9 I swear the foregoing is true and correct to the best of my knowledge and belief.

                                         _____
                                         Anthony Lyons
                                         Special Agent

Subscribed and sworn to before me this ___6___ day of April, 2018.

_____
The Honorable William V. Gallo
United States Magistrate Judge

9